UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FARIS NISSAN,

    Plaintiff,

vs.

STATE FARM FIRE AND CASUALTY
COMPANY,

    Defendant.
_____/

Civil Action No.
11-cv-13047

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER
(1) DENYING DEFENDANT'S MOTION IN LIMINE (Dkt. No. 24),
(2) DENYING DEFENDANT'S REQUEST TO REVERSE THE ORDER OF PROOFS
AT TRIAL, and
(3) DENYING PLAINTIFF'S MOTION IN LIMINE (Dkt. No. 25)**

This is a breach of contract case involving an insurance coverage dispute. Faris Nissan ("Plaintiff") and Habil Nissan filed the Complaint in this matter against State Farm Fire and Casualty Company ("Defendant"). The case was removed to this Court on July 14, 2011. (Dkt. No. 1.) On November 13, 2012, the parties stipulated to the dismissal of Habil Nissan.

A trial date in this case is set for September 10, 2013. Plaintiff and Defendant both filed motions in limine on July 12, 2013. (Dkt. Nos. 24 and 25.) Defendant filed a response on July 23, 2013 (Dkt. No. 28), and Plaintiff filed a response on July 26, 2013 (Dkt. No. 29). The Court finds the briefing sufficient and will decide the parties' motions without oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons stated below, the Court will:

(1) DENY Defendant's Motion In Limine;

1

(2) DENY Defendant's request to reverse the order of proofs at trial; and

(3) DENY Plaintiff's Motion In Limine.

## I. BACKGROUND

On August 3, 2009, Plaintiff's home on 19339 Exeter Street in Detroit, Michigan (the "Exeter Property"), was allegedly burglarized and damaged by a fire. Plaintiff notified Defendant, which insured the Exeter Property under a homeowners insurance policy. Defendant investigated Plaintiff's claim. During the course of Defendant's investigation, a second fire occurred at the Exeter Property on September 8, 2009. Plaintiff also sought coverage for this fire under the insurance policy issued by Defendant.

Plaintiff claims that an unknown individual broke into the Exeter Property and set both fires. Defendant's investigation concluded, however, that both fires and the burglary of the Exeter Property resulted from arson and fraud by Plaintiff. Defendant has denied coverage for both fires and the theft.

## II. LEGAL STANDARD

Both parties have filed motions in limine seeking to exclude certain evidence from the trial in this case. "A motion in limine is any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013) (internal quotation marks omitted). These motions are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (internal quotation marks omitted).

## III. ANALYSIS

**A. Plaintiff's Motion In Limine**

Plaintiff seeks to exclude from the trial evidence that Captain Michael Anderson of the Detroit Fire Department ("DFD") told Defendant's investigator, David Stayer, that firefighters had to make a forced entry to the Exeter Property during the August 3, 2009 fire. Mr. Stayer's report states: "On August 17, 2009, I returned to the station and made contact with Captain Michael Anderson. Anderson recalled the fire and confirmed that the house *was* secure upon the fire department's arrival and that they had to make forced entry at the front door." (Pl.'s Mot. In Limine, Ex. A, Sayer Report at 6 (emphasis in original).) However, during his November 10, 2011 deposition testimony, Captain Anderson initially stated that he could not recall if the DFD had to make a forcible entry into the Exeter Property. Plaintiff asserts that the statements of Captain Anderson that appear in Mr. Stayer's report are inadmissible hearsay.

Defendant points out that, after Captain Anderson testified that he could not recall if DFD had to make a forcible entry on August 3, 2009, Defendant's counsel used Mr. Stayer's report to refresh his memory. Captain Anderson then testified that the Exeter Property was locked when DFD arrived. There is therefore no conflict between Captain Anderson's November 10, 2011 deposition testimony and Mr. Stayer's report. The content of the hearsay statements in the report – that Captain Anderson told Mr. Stayer that the Exeter Property was secured when the DFD arrived on August 3, 2009 – are admissible through the direct testimony of Captain Anderson. Nevertheless, Plaintiff seeks an order barring admission of the statements in Mr. Stayer's report.

To the extent that Defendant seeks to admit the statements in Mr. Stayer's report only as evidence of why Mr. Stayer concluded that the first fire at the Exeter Property was intentionally set, and not for their truth, the statements are not hearsay under Rule 801. If the statements are admitted

3

only to prove that Mr. Stayer heard them in the course of his investigation, they are not admitted for their truth. In this case, the Court will issue a limiting instruction to the jury if Plaintiff so requests.

Mr. Stayer's out-of-court statements about what Captain Anderson told him are not admissible for their truth unless a hearsay exception applies. *See* FRE 801 and 802. Defendant states that it will only seek to use the statements to either refresh Captain Anderson's recollection under FRE 612, or to impeach his testimony, under FRE 607, if it differs from the statements in the report. Rule 612 does not require introducing the statements in the report into evidence. Thus, the issue is whether the statements can be introduced as impeachment evidence.

The United States Court of Appeals for the Sixth Circuit "ha[s] consistently recognized the broad scope of allowable impeachment evidence and, more importantly perhaps, the significant discretion left to the trial court in this area." *United States v. Markarian*, 967 F.2d 1098, 1103 (6th Cir. 1992). Extrinsic evidence of a prior inconsistent statement is admissible pursuant to FRE 613(b). "The foundational prerequisites of Rule 613(b) require only that the witness be given an opportunity, at some point, to explain or deny the prior inconsistent statement and that the opposing party be given the opportunity to examine the statement." *Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 722 (6th Cir. 2005). Furthermore, "[a] district court may exercise its discretion to exclude such evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* at 723 (quoting FRE 403).

The statements in Mr. Stayer's report are admissible under Rule 613(b) as a prior inconsistent statement if Captain Anderson's trial testimony is inconsistent with them. However, Captain Anderson's November 10, 2011 deposition testimony moots this issue. The deposition

testimony, which is consistent with Mr. Stayer's report, is admissible both substantively and as impeachment evidence under FRE 801(d)(1)(A).

In sum, Defendant may use the statements in Mr. Stayer's report to refresh the recollection of Captain Anderson, may admit the statements as non-hearsay to prove that Mr. Stayer heard them in the course of his investigation, and may admit them as impeachment evidence if Captain Anderson's trial testimony conflicts with them. Plaintiff's motion in limine is thus denied.

Plaintiff also seeks to exclude testimony of Plaintiff's neighbor, Kathleen Belcher, who testified that she heard Plaintiff's brother, Mark Nissan, tell others that the family was planning on moving from the Exeter Property. Mark Nissan testified that he never made the statements that Belcher allegedly heard. Plaintiff argues that Belcher's testimony regarding what Mark Nissan said is inadmissible hearsay. Defendant asserts that Belcher's testimony is admissible as impeachment evidence.

Belcher's testimony about Mark Nissan's alleged statement is admissible to impeach Mark Nissan's testimony, as long as Mark Nissan is given an opportunity to explain the statement. *See* FRE 613(b). Furthermore, the prejudice that admission of the statement would cause to Plaintiff is not outweighed by the probative value of the statement as impeachment evidence. Any prejudice to Plaintiff can be mitigated by a limiting instruction telling the jury to consider the statement only as impeachment evidence, and not as evidence that Plaintiff's family was planning to move. Plaintiff will also have an opportunity to cross exam Belcher, who stated during Defendant's investigation that "it might not have been [Mark Nissan] saying that[,] it might've been some other kids said that they were moving." (Pl.'s Mot. In Limine, Ex. D, Statement of Kathleen Belcher at 2.)

5

Accordingly, for the reasons stated above, the Court denies Plaintiff's Motion In Limine.

**B. Defendant's Motion In Limine**

Defendant first seeks to bar Plaintiff from introducing any evidence that he was not charged criminally in connection with either of the fires at issue. On July 29, 2013, after Defendant filed its motion in limine, the parties consented to entry of the order sought by Defendant. (Dkt. No. 30.) The court will therefore not address Defendant's first request, because it has been fully disposed of by the July 29, 2013 Consent Order.

Defendant seeks an order barring Plaintiff from recovering any damages beyond the insurance policy's 24-month limit. The insurance policy at issue provides that, "[w]hen a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months." (Def.'s Mot. In Limine, Ex. D, Insurance Policy at 4.)

Plaintiff argues that he is entitled to all damages "that arise naturally from the breach [of contract] . . . ." *Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401, 414 (1980). Plaintiff claims that, but for Defendant's breach of contract, he would have been able to make repairs to the Exeter Property and move back in within 24 months. Because Defendant refused to pay for repairs to the Exeter Property, Plaintiff has been forced to continue renting a home for more than 24 months. Plaintiff argues that Defendant is liable for the repairs to the Exeter Property and for his living expenses that arise from Defendant's refusal to pay for the repairs, even though some of the living expenses were incurred after the 24-month period set forth in the insurance policy had passed.

Defendant argues that consequential damages, like those Plaintiff seeks, are only recoverable in breach of insurance contract actions that involve lost profits. *See Parmet Homes, Inc. v. Republic*

*Ins. Co.*, 111 Mich. App. 140, 149-50 (1981) (providing that "[a] contract to insure against fire loss is a commercial contract[,]" and "[l]oss of profits which result from the breach may be considered in assessing damages."). Defendant asserts that Plaintiff's claimed additional living expenses are not within the type of "lost profits" that are recoverable as consequential damages under Michigan law.

It is well settled that the remedy for a breach of contract should "place the nonbreaching party in as good a position as if the contract had been fully performed." *Allison v. AEW Capital Management, L.L.P.*, 481 Mich. 419, 426 n. 3 (2008) (internal quotation marks omitted). Plaintiff claims that his additional living expenses are "mostly" for renting a temporary home. If Defendant did breach the homeowner's insurance policy by refusing to pay for the repairs to Plaintiff's home, then Plaintiff should be permitted to recover the rent payments he has made past the 24-month period. If Defendant had paid for the repairs to the Exeter Property, allowing Plaintiff and his family to move back within 24 months, then allowing recovery of all of Plaintiff's rent payments would be placing Plaintiff in the position he would have been in had the contract been performed. Plaintiff is permitted to introduce evidence of these damages, and Defendant's motion in limine seeking to bar this evidence is denied.

Defendant next seeks an order allowing Defendant to lead the proofs at trial – i.e., to give the first opening statement, to lead proofs on its defenses to Plaintiff's claims, to give the first closing argument, and to have an opportunity for rebuttal argument. Defendant argues that it should be allowed to lead proofs because it has the burden of proof as to its defenses to liability. *See Dishman v. Am. General Assurance Co.*, 193 F. Supp. 2d 1119, 1128 (N.D. Iowa 2002) (allowing defendant to lead proofs at trial in a breach of contract case, "because Mrs. Dishman's success or

7

failure on her claim is ultimately dependent upon AGAC's success or failure on its affirmative defense.").

"A district court has wide discretion to set the order of proof at trial. Ordinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of proof." *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1344 (8th Cir. 1996) (citation omitted). There is no dispute in this case that the Exeter Property was damaged by fire, and that Defendant refused payment under the homeowner's insurance policy. Nevertheless, the Court does not find that reversing the order of proofs at trial is appropriate in this matter. The Court notes that, regardless of the undisputed facts, Plaintiff retains the burden of proof on his breach of contract claim. Defendant's request to lead the proofs at trial is denied.

Defendant also seeks an order barring Plaintiff from calling any witnesses who are not named on Plaintiff's witness list. Plaintiff states that he does not anticipate calling any unnamed witnesses, but that he may need to call unnamed witnesses to rebut Defendant's case as the trial progresses.

The Court's Amended Scheduling Order in this matter, entered on January 17, 2013 (Dkt. No. 20), provides as follows regarding listing witnesses in the Joint Final Pretrial Order:

> Each party shall list the names of all witnesses, identifying which are experts, that it will call (in the absence of reasonable notice to the contrary to opposing counsel), and those witnesses it may call. No witness shall be listed who has not been included on any witness list submitted pursuant to a prior order of the Court. *Only listed witnesses will be permitted to testify at trial, except for rebuttal witnesses whose testimony could not be reasonably anticipated before trial, or except for good cause shown*.

(Amended Scheduling Order at 4 (emphasis added).)

Pursuant to the Court's Amended Scheduling Order, both parties are barred from calling witnesses that are not named on the Joint Final Pretrial Order, except for rebuttal witnesses. Plaintiff

8

therefore is not barred from calling *any* witnesses not named in the Joint Final Pretrial Order, as Defendant contends, because Plaintiff is permitted to call rebuttal witnesses. Defendant's request to bar Plaintiff from calling any witnesses not listed on the Joint Final Pretrial Order therefore is denied.

### IV. CONCLUSION

For the reasons stated above, the Court will:

(1) **DENY** Defendant's Motion In Limine;

(2) **DENY** Defendant's request to reverse the order of proofs at trial; and

(3) **DENY** Plaintiff's Motion In Limine.

**SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: August 20, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 20, 2013.

s/Deborah Tofil
Case Manager